[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13253
_____

D.C. Docket No. 08-14020-CV-FJL

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 7, 2011
JOHN LEY
CLERK

JAMES D. GENTRY,
DONALD J. HUNT,
R. SCOTT STONE, JR.,
PATRICIA STONE,

Plaintiffs-Appellees,

versus

HARBORAGE COTTAGES-STUART, LLLP, a
Florida limited liability limited partnership,
NORTHSIDE MARINA VENTURE, LLC, a
Florida limited liability company,

Defendants-Appellants.

_____

No. 09-14636
_____

D.C. Docket No. 08-14020-CV-FJL

JAMES D. GENTRY,
DONALD J. HUNT,

Plaintiffs-Appellees,

R. SCOTT STONE, JR.,
PATRICIA STONE,

                                                     Consolidated-Plaintiffs-
                                                     Appellees,

                              versus

HARBORAGE COTTAGES-STUART, LLLP, a
Florida limited liability limited partnership,

                                                     Defendant-Appellant,

NORTHSIDE MARINA VENTURE, LLC, a
Florida limited liability company,

                                                     Defendant-Consolidated-
                                                     Defendant-Appellant.

                    _____

                 Appeals from the United States District Court
                    for the Southern District of Florida
                    _____
                          (September 7, 2011)

Before PRYOR and COX, Circuit Judges, and PANNELL, District Judge.[*]

COX, Circuit Judge:

        Several purchasers of condominium units sued developer Harborage Cottages-

Stuart, LLLP ("Harborage"), alleging that Harborage violated the Interstate Land

_____

        [*]Honorable Charles A. Pannell, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

                                          2

Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701, *et seq.*, and several Florida statutes. The district court granted summary judgment in favor of the purchasers. Central to this appeal is the court's conclusion that Harborage violated 15 U.S.C. § 1703(a)(1)(B) by failing to provide the purchasers with a property report prior to their signing the purchase agreements. In finding that Harborage violated § 1703(a)(1)(B), the court rejected Harborage's contention that the purchasers' condominium units were exempt from the requirements of the ILSFDA. The court rejected this contention, finding that Harborage structured the sale of the condominium units "for the purpose of evasion" of the ILSFDA, and therefore Harborage was not entitled to an exemption under 15 U.S.C. § 1702. The court ordered the return of the purchasers' deposits as damages for the ILSFDA violation, and awarded the purchasers attorneys' fees and costs.

We agree with the district court that Harborage is not entitled to an exemption under 15 U.S.C. § 1702. Thus, we affirm the court's grant of summary judgment in favor of the purchasers on their claim that Harborage violated § 1703(a)(1)(B) by failing to provide a property report. And, we affirm the court's award of damages, attorneys' fees, and costs.

## I. BACKGROUND & PROCEDURAL HISTORY

A.    Factual Background

3

Harborage develops and sells luxury condominiums. It developed the Harborage Yacht Condominiums ("Harborage Condominiums"), a nine-building development on the St. Lucie River in Stuart, Florida. In May 2005, Plaintiffs R. Scott Stone, Jr. and Patricia Stone ("the Stones") contracted to purchase a unit in the Westport building of the Harborage Condominiums for $430,000, and put down an $86,000 deposit. The following month, Plaintiffs James D. Gentry and Donald J. Hunt ("Gentry-Hunt") contracted to purchase a unit in the St. Martin building of the Harborage Condominiums for $350,000, and put down a $70,000 deposit. We refer to the Stones and Gentry-Hunt collectively as "Plaintiffs."

The Harborage Condominiums had not been built at the time the Plaintiffs entered into these contracts. The Harborage project included 126 units. Thirty-six units were covered by contracts that obligated Harborage to complete construction within two years. The other ninety units, including the units purchased by Plaintiffs, were sold under contracts that did not contain the two-year construction provision.

Harborage used an artist's rendering of the Harborage Condominiums, known as a Site Plan, to market the project. The Site Plan shows the location of each condominium building, the Yacht Club and marina, and several areas that are marked for future development. One of the areas marked for future development is located at the project's southernmost edge, near the St. Martin building. Though not depicted

4

on the Site Plan, two commercial buildings are located in this future development area next to the St. Martin building. The Site Plan includes a disclaimer: "All renderings are artist's conception and are subject to change, without notice at the developer's sole discretion. Renderings used for representative purposes only." (Dkt. 1-1 at 23-24.)

B.     Procedural History

The Stones and Gentry-Hunt filed separate lawsuits against Harborage, and the district court consolidated them.[1]  As pertinent to this appeal, Gentry-Hunt and the Stones both allege that Harborage violated the ILSFDA in two main ways. They allege that Harborage violated 15 U.S.C. § 1703(a)(1)(B) and (c) by failing to provide a required property report. And, they allege that Harborage violated 15 U.S.C. § 1703(a)(2) by making material misrepresentations in the Site Plan.

Gentry-Hunt and the Stones also allege several state law claims against Harborage. Both Gentry-Hunt and the Stones allege that Harborage violated Fla. Stat. § 501.204(1) by making false representations in the Site Plan. Gentry-Hunt, but not the Stones, also filed a claim alleging that Harborage violated Fla. Stat. § 718.506 by

[1]Gentry-Hunt also sued Northside Marina Venture, LLC ("Northside"). The district court granted summary judgment in favor of Northside on all claims asserted against it. Gentry-Hunt has not appealed the dismissal of its claims against Northside, and Northside is not a party to this appeal.

5

publishing false and misleading information in the Site Plan. All parties filed motions for summary judgment.

1. Exemptions Under 15 U.S.C. § 1702(a)(2) and (b)(1)

In Harborage's summary judgment motion, it conceded that it did not provide a property report to the Plaintiffs as required by 15 U.S.C. § 1703(a)(1)(B) and (c). Harborage argued, however, that it did not have to provide the report because 15 U.S.C. § 1702(a)(2) and (b)(1) exempted Plaintiffs' units from the requirements of the ILSFDA. Section 1702(a)(2) exempts properties upon which a contract obligates the seller to erect a building within two years. *See* 15 U.S.C. § 1702(a)(2). Harborage argued that thirty-six of the 126 units were exempt under § 1702(a)(2) because the purchase agreements covering those units obligated Harborage to complete construction within two years. Section 1702(b)(1) exempts subdivisions containing fewer than one hundred units which are not exempt under § 1702(a)(2). *See* 15 U.S.C. § 1702(b)(1). Harborage argued that the ninety units not exempt under § 1702(a)(2), including the units purchased by Plaintiffs, were exempt under § 1702(b)(1).

The district court concluded that Harborage failed to establish entitlement to the exemptions afforded by 15 U.S.C. § 1702(a)(2) and (b)(1). The court determined that, in order to invoke these exemptions, Harborage was obligated to establish that

6

its method of selling the condominium units was not adopted for the sole purpose of evading the ILSFDA's protections. The district court's analysis centered on whether Harborage's use of two different purchase agreements, which largely exempted Harborage from the ILSFDA's requirements, was adopted for the purpose of evading the ILSFDA's requirements. *Gentry v. Harborage Cottages-Stuart, LLLP,* 602 F. Supp. 2d 1239, 1246-50 (S.D. Fla. 2009). The district court noted that this circuit has no clear definition of what constitutes "evasion" for the purposes of § 1702, but concluded that Harborage had failed to prove that two different sales contracts were not used for the purpose of evading the ILSFDA. Therefore, the court held Harborage was not entitled to invoke the ILSFDA's exemptions. *Id.* at 1250-51.

In so ruling, the district court placed the burden on Harborage, the developer/seller, to produce "factual evidence demonstrating that the method of disposition has some bona fide, real world objective that manifests a legitimate business purpose." *Id.* at 1248. Applying that standard, the district court held that, while "[i]t is not inconceivable that there could be some legitimate business reason" for Harborage to use two different purchase agreements, Harborage could not avail itself of § 1702(b)(1)'s ninety-nine lot exemption because "no legitimate business purpose is evident" from the record. *Id.* at 1249. Because Harborage failed to meet its burden of showing that the § 1702 exemptions apply in this case, and because

7

Harborage conceded it did not provide a property report as required by 15 U.S.C. § 1703(a)(1)(B) and (c), the district court granted summary judgment to Plaintiffs on this claim.

2. Florida Condominium Act, Fla. Stat. § 718.506

In Gentry-Hunt's summary judgment motion, they contended that Harborage violated Fla. Stat. § 718.506 by publishing false and misleading information in the Site Plan. They argued that the Site Plan presented an untrue statement of material fact because it misled purchasers to believe that an area marked "Future Development" was vacant land when, in fact, it contained an operating business and a storage facility. The district court granted summary judgment in favor of Gentry-Hunt on this § 718.506 claim. The court also granted summary judgment in favor of the Stones under § 718.506 even though the Stones never asserted such a claim in their complaint.

3. ILSFDA, 15 U.S.C. § 1703(a)(2) and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1)

The court granted summary judgment to Plaintiffs on their claims asserted under the ILSFDA anti-fraud provision, 15 U.S.C. § 1703(a)(2), and their claim asserted under Fla. Stat. § 501.204(1). Plaintiffs concede, however, that they did not seek summary judgment on these claims.

8

4. Damages

After determining that Harborage violated 15 U.S.C. § 1703(a)(1)(B) and (c) by failing to provide a property report, the court referred the issue of damages to a magistrate judge. For the violations of the ILSFDA under 15 U.S.C. § 1703(a)(1)(B) and (c), the court awarded Plaintiffs the return of their deposits as equitable relief under 15 U.S.C. § 1709. Plaintiffs were also awarded attorneys' fees and costs under § 1709(c). The court noted that Fla. Stat. § 718.506 provided an alternative basis for Gentry-Hunt's recovery of their deposit.

## II. ISSUES

Harborage raises the following issues on appeal: (1) whether the district court erred in concluding that Harborage failed to show that it is exempt under 15 U.S.C. § 1702(a)(2) and (b)(1) from the requirements of the ILSFDA; (2) whether the court erred in granting summary judgment to Plaintiffs on their claims asserted under Fla. Stat. § 718.506; (3) whether the court erred in granting summary judgment to Plaintiffs on their claims asserted under 15 U.S.C. § 1703(a)(2) and Fla. Stat. § 501.204(1), which Plaintiffs did not assert in their motion for summary judgment; and (4) whether the court erred in awarding Plaintiffs a refund of their deposits and attorneys' fees as damages under 15 U.S.C. § 1709.

## III. STANDARD OF REVIEW

9

We review de novo the district court's grant of summary judgment. *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citation omitted). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted).

## IV. DISCUSSION

A.    ILSFDA Exemptions Under 15 U.S.C. § 1702(a)(2) and (b)(1)

Plaintiffs claim that Harborage violated the disclosure provisions of the ILSFDA. Under 15 U.S.C. § 1703(a)(1)(B), a developer is prohibited from selling or leasing a lot "unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee." When a property report has not been provided to the buyer before executing the contract of sale, "such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right." 15 U.S.C. § 1703(c). It is undisputed in this case that Harborage did not provide a property report and consequently did not notify Plaintiffs of their revocation rights.

Harborage contends that it did not have to provide this report because the Plaintiffs' condominium units were exempt from the ILSFDA's disclosure

10

requirements. Two exemptions are at issue in this case. The first exemption, known as the "two-year exemption," exempts properties upon which a contract obligates the seller to erect a building within two years. *See* 15 U.S.C. § 1702(a)(2). Section 1702(a)(2) states:

> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to –
>
> . . .
>
> (2) the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building, or the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years . . . .

The second exemption at issue, known as the "99 unit exemption," exempts subdivisions containing fewer than one hundred units which are not exempt under § 1702(a)(2). *See* 15 U.S.C. § 1702(b)(1). Section 1702(b)(1) states:

> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions requiring registration and disclosure . . . shall not apply to –
>
> (1) the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section . . . .

The Department of Housing and Urban Development (HUD), the federal agency responsible for promulgating the ILSFDA's rules and regulations applicable

in this case,[2] has adopted guidelines that allow a developer to combine exemptions. Guidelines to the Interstate Land Sales Registration Program, 61 Fed. Reg. 13596 (Mar. 27, 1996).[3] For example:

> [A] developer of a subdivision containing a total of 129 lots . . . qualifies for [the one hundred lot exemption] if at least 30 lots are sold in transactions that are exempt because the lots had completed homes erected on them. The 30 exempt transactions may fall within any one exemption or a combination of exemptions noted in [Section 1702(a)(2)-(8)] and may be either past or future sales . . . . Developers of subdivisions containing more than 99 lots who wish to operate under this exemption must assure themselves that all lots in excess of 99 have been and will be sold in transactions exempt under [Section 1702(a)(2)-(8)] . . . .

*Id.* at 13604.

In this case, the development contained a total of 126 units. Of the 126 units, thirty-six units were sold under contracts that obligated Harborage to complete construction within two years, thereby exempting these thirty-six units under §

___

[2]Effective July 21, 2011, the Interstate Land Sales Full Disclosure Act will be administered and enforced by the Consumer Financial Protection Bureau. *See* U.S. Dep't of Hous. & Urban Dev. (August 23, 2011), http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/rmra/ils/ilshome.

[3]"Because the HUD Guidelines are not published regulations subject to the rigors of the Administrative Procedure Act, including public notice and comment, they do not deserve full [] deference." *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 846, 858 n.7 (11th Cir. 2009) (citing *Reno v. Koray,* 515 U.S. 50, 61, 115 S. Ct. 2021, 2027 (1995)) (internal quotation marks omitted). "A guidelines position is entitled to only as much deference as it merits based on the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Stein*, 586 F.3d at 858 n.7 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 164 (1944)).

1702(a)(2). The remaining ninety units, including the Plaintiffs' units, were covered by a different purchase agreement that did not obligate the developer to complete construction within two years. Harborage argues that these remaining ninety units are exempt under the § 1702(b)(1) ninety-nine unit exemption.

Plaintiffs contend that the exemptions do not apply in this case. They argue that the exemptions in § 1702(a)(2) and (b)(1) do not apply if "the [developer's] method of disposition is adopted for the purposes of evasion of this chapter." *See* 15 U.S.C. § 1702(a)(2) and (b)(1). According to Plaintiffs, Harborage structured the sale of the various units specifically to avoid the ILSFDA's requirements, and thus the exemptions do not apply.

The question in this case, therefore, is whether the use of two separate purchase agreements, which technically exempt Harborage from the ILSFDA's requirements, constitutes a method of disposition that was adopted for the purpose of evading the ILSFDA's requirements. If so, then Harborage is not entitled to any exemptions found in § 1702. If not, then Harborage is exempt from the ILSFDA's requirements. This question turns on what constitutes "evasion" within the meaning of § 1702.

When construing a statute, "we must begin, and often should end as well, with the language of the statute itself." *Am. Gen. Fin., Inc. v. Paschen*, 296 F.3d 1203, 1207 (11th Cir. 2002) (citation omitted). With statutory construction, a court's "first

step is to determine whether the language . . . has a plain and unambiguous meaning." *Delgado v. U. S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) (citation and internal quotations omitted). Subparts (a)(2) and (b)(1) of Section 1702 state in pertinent part that the enumerated exemptions in the ILSFDA do not apply if the developer's "method of disposition is adopted for the purpose of evasion of this chapter."

Two principles are implicit in the text and structure of the exemptions in § 1702. First, a developer may take conscious action to ensure that a subdivision meets the requirements of an exemption. "[T]he mere fact that a developer structures the sales of a subdivision in a way that makes the project exempt from the ILSFDA is not, without more, sufficient to conclude that the seller has taken such action for the purpose of evading the ILSFDA's requirements." *Gentry*, 602 F. Supp. 2d at 1247. We find no "evasion" in a seller's conscious decision to seek an exemption because Congress, through a roster of exemptions in § 1702, clearly intended that not all interstate land sales should be regulated by federal law. And, HUD's Guidelines specifically allow a developer to combine exemptions. *See* 61 Fed. Reg. 13596, 13604.

The second principle limits the first. While a developer may take conscious action to ensure that a sale meets the requirements of an exemption, the developer cannot do so "for the purpose of evasion" of the ILSFDA. Because Congress clearly

14

prohibited a developer from acting with "the purpose of evasion," the developer cannot merely show that the sale technically meets the requirements of an exemption. The developer must also show that its purpose for seeking the exemption was not solely to evade the requirements of the ILSFDA.

To accommodate both of these principles, a sensible distinction must be drawn "between conduct which has as its primary object avoidance of the ILSFDA's requirements and conduct that seeks to meet the requirements of an exemption for some legitimate business purpose." *Gentry*, 602 F. Supp. 2d at 1248. A developer must be able to structure a transaction in order to meet an exemption, but it cannot do so for the sole purpose of avoiding the ILSFDA. We therefore hold that a developer seeking an exemption under § 1702(a)(2) and (b)(1) must produce factual evidence demonstrating that the method of disposition has a real world objective that manifests a legitimate business purpose. The "legitimate business purpose" standard asks the party invoking the exemption to articulate some legitimate business reason for its method of disposition other than the avoidance of the ILSFDA's consumer protections. Contrary to Harborage's contention, the "legitimate business purpose" standard does not "rewrite" the ILSFDA. Instead, the standard explains in straightforward terms what a party must prove in order to claim an exemption. The standard accommodates both Congress's intent in making the exemptions available

15

to developers while at the same time ensuring that the exclusive reason for invoking the method of disposition is not to evade the ILSFDA.

Our interpretation of the exemptions in § 1702(a)(2) and (b)(1) is consistent with the remedial purposes of the ILSFDA. The ILSFDA is "an antifraud statute utilizing disclosure as its primary tool" with the principal purpose of "protect[ing] purchasers from unscrupulous sales of undeveloped home sites." *Winter v. Hollingsworth Props., Inc.*, 777 F.2d 1444, 1447 (11th Cir. 1985). When interpreting exemptions in a remedial statute such as the ILSFDA, the general rule is that exemptions should be narrowly construed. *See Markowitz v. Ne. Land Co.*, 906 F.2d 100, 105 (3d Cir. 1990) (noting that exemptions from the ILSFDA should be narrowly construed); *De Luz Ranchos Inv., Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297, 1302 (9th Cir. 1979) (same); *Pigott v. Sanibel Dev., LLC*, 576 F. Supp. 2d 1258, 1268 (S.D. Ala. 2008) (same). Allowing a developer to structure the sale to comply with an exemption while also requiring a developer to provide evidence that it did so for a legitimate business purpose is consistent with the consumer protection policies in the ILSFDA.

Our interpretation that the exemptions in § 1702(a)(2) and (b)(1) require the developer to provide evidence of a legitimate business purpose conflicts with the Eighth Circuit's fraudulent-intent test. In *Atteberry v. Maumelle Co.*, 60 F.3d 415

16

(8th Cir. 1995), the Eighth Circuit held that a seller's actions only constitute evasion within the meaning of § 1702(a) and (b) if the seller's attempt to exempt itself from the ILSFDA's requirements is accompanied by fraudulent intent. *Id.* at 421. In other words, the court held that plaintiffs challenging a developer's entitlement to an exemption must prove that the developer entered into the sales contract with a fraudulent purpose, such as never intending to actually construct the condominiums. *Id.*

The Eighth Circuit's fraudulent-intent test does not accurately reflect the text and policies of § 1702. As a textual matter, "evasion" does not mean the same thing as "fraud," and in drafting § 1702 Congress gave no indication that evasion should be construed as tantamount to fraud. The fraudulent-intent test also expands the scope of all exemptions in § 1702 and undermines the fundamental consumer protection purposes of the ILSFDA. By focusing only on the goal of preventing fraud, the fraudulent-intent test ignores other key purposes of the ILSFDA–"to insure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property." *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir. 1978) (citation omitted). We therefore conclude that the legitimate-business-purpose standard is

17

more consistent with the ILSFDA's text and policies than the Eighth Circuit's fraudulent-intent standard.

Harborage also contends that the district court erred in placing on it the burden of proving entitlement to an exemption from the ILSFDA. Harborage argues that Plaintiffs bear the burden of proving that Harborage is not entitled to the exemption because the "evasion" provision is an exception to an otherwise-applicable exemption. (Appellant Br. at 23.) We disagree. Generally, the party claiming an exemption to a statute's requirements carries the burden of establishing its entitlement thereto. *See, e.g., NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 711, 121 S. Ct. 1861, 1866 (2001) ("'[T]he burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits.'") (quoting *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45, 68 S. Ct. 822, 827 (1948)). The exemptions in the ILSFDA are not out of step with this general rule. The Code of Federal Regulations provides: "If a developer elects to take advantage of an exemption, the developer is responsible for maintaining records to demonstrate that the requirements of the exemption have been met." 24 C.F.R. § 1710.4(d) (1987). One of the requirements of the exemption in § 1702(a)(2) and (b)(1) is that the developer cannot devise a method of disposition for the purpose of

18

evading the ILSFDA. Instead, the developer has the burden of demonstrating that the evasion of the ILSFDA is not the only reason for seeking the exemption.[4]

Having concluded that § 1702(a)(2) and (b)(1) require the developer to produce evidence of a legitimate business purpose, we turn to whether Harborage has met its burden in this case. It clearly has not. While the burden of showing a legitimate business purpose is not a heavy one, Harborage did not present any evidence of a legitimate business purpose for disposing of its property using two separate contracts. The most we can adduce from the record is that Harborage relied on the advice of legal counsel in deciding to dispose of its property by means of two different contracts. But Harborage's counsel never offered a legitimate business reason for structuring the condominium sale in this manner. As we have explained, a developer must show that it sought an exemption for reasons other than evasion of the ILSFDA. We recognize that reliance on legal advice could, in some instances, meet a

---

[4]Harborage cites *Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 245 (2d Cir. 2006) and *Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 967 (E.D. Cal. 2003) in support of its position that the burden should be on Plaintiffs to prove the so-called "evasion exception" in § 1702. Those cases do not help Harborage. The burden of proof in those cases turned on the language of the particular statutes at issue and the policy consequences of requiring a party to prove a particular fact. In this case, the language in § 1702 does not require a shifting of the burden of proof. And, the policy concerns that may support a shift in the burden of proof are not present in this case. There is nothing inefficient or unfair about requiring a developer to articulate its own business purpose for claiming an exemption to the ILSFDA.

developer's burden to prove entitlement to an ILSFDA exemption, *i.e.*, in cases where the record demonstrates that counsel drafted purchase agreements for legitimate business purposes other than the avoidance of the ILSFDA. Under the facts presented in this case, however, the legal advice relied upon by Harborage demonstrates no clear understanding of the ILSFDA's "evasion" language. Because Harborage failed to submit evidence of a legitimate business purpose, it cannot claim an ILSFDA exemption.[5]

Harborage admits that it did not provide a property report as required by 15 U.S.C. § 1703(a)(1)(B) and (c). Because Harborage failed to prove that it was entitled to an exemption from the ILSFDA, its admitted failure to provide the report violates the ILSFDA. We therefore affirm the district court's grant of summary judgment in favor of the Plaintiffs on their claim that Harborage violated § 1703(a)(1)(B) and (c).

B.      Violation of the Florida Condominium Act, Fla. Stat. § 718.506

Florida law prohibits the publication of false and misleading information by condominium developers. Under Fla. Stat. § 718.506, a purchaser can sue to rescind

---

[5] Harborage's corporate representative explained in his deposition that Marin County, unlike most jurisdictions, would not issue a certificate of occupancy for individual units within a building; instead, the entire building had to be issued a certificate of occupancy. The County's certificate of occupancy process could provide a legitimate business reason why certain buildings were completed within two years while other buildings were not. But Harborage's representative never attempted to justify the sales decision on these grounds.

a contract or collect damages from a developer when induced to enter a purchase contract by false or misleading promotional materials:

> Any person who, in reasonable reliance upon any material statement or information that is false or misleading and published by or under authority from the developer in advertising and promotional materials, including, but not limited to, a prospectus, the items required as exhibits to a prospectus, brochures, and newspaper advertising, pays anything of value toward the purchase of a condominium parcel located in this state shall have a cause of action to rescind the contract or collect damages from the developer for his or her loss prior to the closing of the transaction . . . .

Fla. Stat. § 718.506(1).

The district court found that Harborage violated Fla. Stat. § 718.506 by publishing false and misleading information in the Site Plan. Specifically, the court determined that, even though Harborage's Site Plan contained a disclaimer, it was deceptive and presented "an untrue statement of material fact" because it misled purchasers to believe that an area marked "Future Development" was vacant land when, in fact, it contained an operating business and a storage facility. *Gentry*, 602 F. Supp. 2d at 1253-55. The court also found that it would have been near-impossible for a potential purchaser to discern that these buildings were located in the area designated as "Future Development" by the Site Plan. *Id.* at 1254. Because a purchaser can sue to rescind a contract or collect damages from a developer when induced to enter into a purchase contract by false or misleading promotional

21

materials, the district court found that the misrepresentations in the Site Plan were enough to make Harborage liable to Plaintiffs under this Florida statute. *Id.* at 1255.

Harborage argues that Gentry-Hunt's § 718.506 claims are barred because the purchase agreements themselves disclaimed reliance on extra-contractual materials. Harborage cites cases that stand for the proposition that there can be no recovery for reliance on a misrepresentation that is expressly contradicted in a later contract. *E.g., Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005). This argument was raised in the district court and the court found that there were no terms in the purchase agreements that expressly contradicted Harborage's misrepresentations and omissions concerning the "Future Development" area. We agree with the court's conclusion. And, because the purchase agreements failed to dispel the Site Plan's misrepresentations, the district court correctly held that Harborage violated § 718.506.

Though the district court correctly determined that Harborage violated § 718.506, the court's analysis is written as if Harborage violated § 718.506 for both Gentry-Hunt and the Stones. However, only Gentry-Hunt filed a § 718.506 claim against Harborage based on the Site Plan. The Stones admit that, to the extent that the district court's ruling implies that the Stones filed a § 718.506 claim, it is in error.

22

(Dkt. 138 at 4-5.) We therefore conclude that the district court erred in granting summary judgment to the Stones under § 718.506. We affirm the grant of summary judgment to Gentry-Hunt on the § 718.506 claim.

C.      Violation of the ILSFDA's Anti-Fraud Provision and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204(1)

Harborage argues that the district court erred in granting summary judgment to Plaintiffs on their claim asserted under the ILSFDA anti-fraud provision, 15 U.S.C. § 1703(a)(2), and their claim asserted under Fla. Stat. § 501.204(1). Plaintiffs concede that they did not seek summary judgment under the ILSFDA's anti-fraud provision or § 501.204(1). (Appellee Br. at 23.) Pursuant to Fed. R. Civ. P. 56 (a), a party seeking summary judgment must "identify[] each claim . . . on which summary judgment is sought." *Id.* A court may grant a motion for summary judgment on grounds not raised by a party only "[a]fter giving notice and a reasonable time to respond . . . ." Fed. R. Civ. P 56(f). In this case, the court entered judgment on claims not identified by Plaintiffs in their Rule 56 motion and without advance notice. This was error. Consequently, we vacate the district court's grant of summary judgment to Gentry-Hunt and the Stones on their ILSFDA fraud claims and § 501.204(1) claims.

D.      Damages for the ILSFDA Violation

As we have explained, Defendants violated 15 U.S.C. § 1703(a)(1)(B) and (c) because they failed to furnish a property report in advance of signing the purchase agreement and they failed to inform Plaintiffs of their right to revoke the contract within two years of signing the purchase agreement.[6] It is undisputed in this case that both Gentry-Hunt and the Stones did not attempt to revoke their contracts within two years of signing their purchase agreements. As a result, Plaintiffs are not entitled to the automatic statutory revocation remedies provided in 15 U.S.C. § 1703(c).

Plaintiffs nonetheless contend that they are entitled to the return of their deposits as equitable relief under 15 U.S.C. § 1709. Section 1709 reads, in pertinent part:

---

[6]15 U.S.C. § 1703(a)(1)(B) provides:
> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails–
> (1) with respect to the sale or lease of any lot not exempt under section 1702 of this title–
> . . .
> (B) to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee . . . .

15 U.S.C. § 1703(c) provides:
> In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.

24

(a) Violations; relief recoverable
A purchaser . . . may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable. In determining such relief the court may take into account, but not be limited to, the following factors: the contract price of the lot . . . [and] the amount the purchaser . . . actually paid . . . .

(b) Enforcement of rights by purchaser or lessee
A purchaser . . . may bring an action at law or in equity against the seller . . . to enforce any right under subsection (b), (c), (d), or (e) of section 1703 of this title.

(c) Amounts recoverable
The amount recoverable in a suit authorized by this section may include, in addition to matters specified in subsections (a) and (b) of this section, interest, court costs, and reasonable amounts for attorneys' fees . . . .

15 U.S.C. § 1709.

Plaintiffs argue that the plain language of § 1709 contemplates that an action in equity may be brought against Harborage, notwithstanding that § 1703(c) affords a right of rescission for a developer's failure to provide the required property report. In support of this contention, Plaintiffs point out that § 1709 authorizes the district court to grant such legal and equitable relief as the court deems just, fair, and equitable.

We agree with Plaintiffs that the district court's damages award is permitted under § 1709. Even though Plaintiffs are not entitled to the automatic statutory

25

revocation remedies provided in 15 U.S.C. § 1703(c) because they did not attempt to revoke their contracts within two years from the date of signing the purchase contracts, they may still be entitled to the return of their deposits as equitable relief under § 1709. Where, as here, a developer violates § 1703(c)'s notice requirement obligating the developer to disclose to Plaintiffs their right to rescind, the purchaser may be entitled to relief under § 1709(b). *See Murray v. Holiday Isle, LLC*, 620 F. Supp. 2d 1302, 1312 (S.D. Ala. 2009) ("Where a purchaser has been damaged by nondisclosure of these rescission rights as required by § 1703(c), the purchaser plainly has an actionable ILSFDA claim pursuant to § 1709(b).").

Defendants argue that permitting Plaintiffs to claim their deposits as equitable relief under § 1709(b) effectively reads the time requirements of § 1703(c) out of that subsection. We disagree. The two-year limitation period in § 1703(c) governs those circumstances in which an aggrieved purchaser seeks to enforce an automatic, unconditional right to revoke if the requirements of the subsection are met. On the other hand, the three-year limitation period in 15 U.S.C. § 1711 governs those circumstances in which a purchaser seeks rescission that is not automatic, but must be supported by proper proof. In other words, the automatic revocation or recision remedy in § 1703(c) itself is not the only revocation or recision remedy. In addition to that remedy, § 1709(b) permits a purchaser to obtain the deposit as an equitable

26

remedy if the purchaser shows that the remedy is justified by the facts of a specific case.

In this case, the district court concluded that Plaintiffs were entitled to recoup their deposits as equitable relief under § 1709(b). We find no error in this conclusion. Plaintiffs filed affidavits stating that they would have timely revoked their contracts had they been notified of the two-year window within which they could rescind. (Dkt. 86-1: ¶17; 93-1: ¶5; 94-1: ¶15.) Plaintiffs' testimony in this regard was not disputed by Harborage. Also undisputed is the amount paid by Plaintiffs to Harborage as deposits that were not returned. We therefore agree with the district court that the return of Plaintiffs' deposits is a logical and appropriate remedy for Harborage's unlawful failure to disclose that Plaintiffs had a right to rescind the purchase agreements within two years of signing them. And, having found no error in the return of the deposits as equitable relief, we reject Harborage's contention that the attorneys' fees award is not supported by a valid damages award.

## V. CONCLUSION

We affirm the district court's grant of summary judgment in favor of the Plaintiffs on their claim that Harborage violated 15 U.S.C. § 1703(a)(1)(B) and (c) by failing to provide a property report. We affirm the court's award of damages and attorney's fees on this claim under 15 U.S.C. § 1709.

We affirm the grant of summary judgment in favor of Gentry-Hunt on the claim that Harborage violated Fla. Stat. § 718.506. We vacate the judgment in favor of the Stones on the § 718.506 claim.

We vacate the grant of summary judgment in favor of Plaintiffs on the claim that Harborage violated the anti-fraud provision of the ILSFDA, 15 U.S.C. § 1703(a)(2), and the claim asserted under Fla. Stat. § 501.204(1).

AFFIRMED IN PART AND VACATED IN PART.