[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12933
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00184-CG-N


LINDA JOHNSON MOSLEY,

Plaintiff-Appellant,

versus

ALABAMA UNIFIED JUDICIAL
SYSTEM, ADMINISTRATIVE
OFFICE OF COURTS, Operating
the Juvenile Court of Mobile County,
Alabama, JUVENILE COURT OF
MOBILE COUNTY, ALABAMA,
EDMOND NAMAN,
LAWRENCE BATTISTE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(April 7, 2014)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Linda Johnson Mosley, a black female, appeals from the district court's grant of summary judgment in favor of the Defendants[1] in her employment discrimination suit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and 42 U.S.C. §§ 1981 and 1983.[2] Mosley raises several issues on appeal, which we address in turn. After review,[3] we affirm in part and vacate and remand in part.

---

[1] The Defendants include the Alabama Unified Judicial System's Administrative Office of Courts, the Juvenile Court of Mobile County, Alabama, Judge Edmond Naman, and Lawrence Battiste, the latter two being sued in both their individual and official capacities.

[2] In her complaint, Mosley alleged she had served as a juvenile probation officer with the Juvenile Court for more than 37 years, and brought five separate claims. In Count One, she brought a claim under § 1983 alleging her layoff in 2011 violated due process. In Count Two, she alleged equal protection violations under § 1983 on the basis the Defendants had wrongly eliminated her job in a layoff, and then later failed to reinstate her to a comparable position, as instructed by the State Appeals Board. In Count Three, she alleged the Defendants violated Title VII when they rejected her for the position of chief juvenile probation officer (CJPO), and instead hired Battiste, a black male with inferior qualifications. In Count Four, she alleged Title VII was also violated when her employers retaliated against her for filing complaints about workplace discrimination. Finally, in Count Five, Mosley alleged the Defendants' discriminatory and retaliatory actions violated § 1981, as amended by the Civil Rights Act of 1991. These acts of retaliation included her employers' refusal to hire her for the CJPO position.
Mosley does not challenge the granting of summary judgment in favor of the Defendants as to Count Four or the district court's dismissal of Judge Naman and Battiste from the Title VII claim in Count Three, and consequently, she abandons those issues on appeal. *See Sepulveda v. U.S. Att'y Gen.,* 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding a party abandons claims that he does not argue in his brief).

[3] We review the district court's grant of summary judgment *de novo*. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

## I. § 1983 CLAIMS

Mosley first contends the district court erred in concluding she had abandoned the two counts in her complaint alleging violations of 42 U.S.C. § 1983, because she did not mention them in her response to the Defendants' motion for summary judgment. Citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991), she contends the non-movant in a summary judgment proceeding is not required to present an argument in support of any claim for which defendants do not discharge their initial burden pursuant to Rule 56 of the Federal Rules of Civil Procedure.

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate an absence of a genuine issue of material fact. *Clark*, 929 F.2d at 608. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate there is indeed a material issue of fact that precludes summary judgment." *Id.*

A party seeking summary judgment must "identify[] each claim . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a); *Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir. 2011) (same); *cf.* Fed. R. Civ. P. 7(b)(1)(B) (stating that a motion requesting relief must "state with particularity the grounds for seeking the order"). A district court commits

3

reversible error when it enters judgment on claims not identified in the motion for summary judgment and without advance notice. *Gentry*, 654 F.3d at 1261.

The district court erred in concluding that Mosley had abandoned her § 1983 claims, because the Defendants failed to sufficiently raise these claims in their motion for summary judgment. First, neither the motion nor the supporting brief specifies that summary judgment was sought for all claims. *See Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (stating when a party moves for final, not partial, summary judgment, "it becomes incumbent upon the nonmovant to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in the moving party's favor" (quotation and alterations omitted)). The question then becomes whether the Defendants, in fact, sought summary judgment for Counts One and Two. Regarding both counts, neither the motion nor the supporting brief mention due process or equal protection, nor do they cite to relevant case law or constitutional amendments. Hence, the Defendants failed to clearly identify Counts One and Two for purposes of seeking summary judgment. *Gentry*, 654 F.3d at 1261.

As for Count One, the court erred in concluding Mosley had been put on notice that the substance of her due process claim was being attacked. The sections of the Defendants' supporting brief cited by the district court did not discuss Mosley's claim she had been deprived of property rights when she was

4

terminated from her position as a probation officer.  The first identified section, included in the "Statement of Uncontested Material Facts," stated that Mosley had alleged "she was not placed back into the position that she held prior to being laid off."  This statement reiterated one of Mosley's allegations of retaliation that took place after her layoff, rather than the deprivation of property related to the layoff itself.  The second identified section of the supporting brief stated that a state appeals board had "specifically stated that [Mosley] was to be reinstated to a merit system position 'comparable [to the] position in the next nearest class to the one abolished.' . . . She was."  Again, this assertion was made in the context of Mosley's retaliation claims, as a rebuttal to her allegation the Defendants had retaliated against her by reinstating her to a lower position with a pay reduction. Hence, contrary to the district court's conclusion, the Defendants' motion for summary judgment did not address the substance of Mosley's due process claims. Accordingly, Mosley did not abandon Count One when she failed to address it in her response brief, as the Defendants did not move for summary judgment as to that claim in the first place.  The district court erred in granting summary judgment as to Count One, as it had not been identified in the Defendants' motion.  *See id.*

As to Count Two, the Defendants correctly argue that "[i]n cases where § 1983 is employed as a remedy for the same conduct attacked under Title VII, the elements of the two causes of action are the same."  *See Underwood v. Perry Cnty.*

5

*Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005) (holding that, when § 1983 is used as a parallel remedy for a violation of Title VII, the elements of the two causes of action are the same (quotations and alterations omitted)).  However, Count Two's § 1983 claim concerned Mosley's layoff and subsequent reinstatement at an allegedly incomparable position, while Count Three's Title VII claim concerned the hiring of Battiste over Mosley for the chief juvenile probation officer (CJPO) position.  Therefore, the Defendants' statement, while correct as a matter of law, could not alert Mosley to the possibility that the arguments proffered against the Title VII claims also applied to the § 1983 claim, as the Title VII claim concerned a different instance of alleged discrimination.  Accordingly, Mosley did not abandon Count Two by failing to address it in her response brief as the Defendants failed to move for summary judgment as to that claim.  The district court erred in granting summary judgment as to Count Two, as it was not identified in the Defendants' motion for summary judgment.  *See Gentry*, 654 F.3d at 1261.

## II.  RACIAL DISCRIMINATION

Mosley further asserts the district court erred in concluding she had abandoned her claims of racial discrimination because she failed to address such claims in her response to the Defendants' motion for summary judgment.  She contends her complaint clearly stated that she belonged to a protected class of "black females," and she could establish a *prima facie* case of discrimination

6

because Battiste, who was hired as the CJPO over Mosley, was a black male. Mosley argues this claim of "sex plus" discrimination, raised in both the equal protection claim of Count Two and the Title VII claim of Count Three, went unchallenged by the Defendants at the summary judgment phase, and therefore she had no duty to put forth an argument in support of this claim.

This Court has recognized black females as a distinct protected subgroup under Title VII. *See Jeffries v. Harris Cnty Cmty. Action Ass'n*, 615 F.2d 1025, 1032-35 (5th Cir. 1980).[4] "[W]hen a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff." *Id.* at 1034.

As discussed above, summary judgment was never sought for Count Two, and thus its dismissal was error. Therefore, the issue of whether Mosley abandoned in her response brief any claims of racial discrimination is limited to Count Three's Title VII claim of discrimination in the hiring of the new CJPO.

Mosley incorrectly states the Defendants did not challenge Count Three's claim of racial discrimination in their motion for summary judgment. Although

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

they did not specifically describe the Title VII claim of discrimination as being against "black females," the Defendants did state that "[n]either race nor gender was a factor" in the selection of the CJPO.  At that point, Mosley was obligated to respond to the Defendants' denial of race or gender discrimination as to the filling of the CJPO position, or face abandonment of the issue.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding a non-movant's silence on an issue after a movant raises the issue in a summary judgment motion is construed as an abandonment of the claim).

The district court did not err in determining that Mosley abandoned any grounds of racial discrimination by failing to address them in her opposition brief to the motion for summary judgment.  First, she identified the Title VII discrimination claim in her brief as a "sex discrimination" claim.  Second, while she did state that she satisfied her *prima facie* case for discrimination because she was "an African American female," she made no other reference to belonging to the distinct protected subclass of "black females," nor did she cite to *Jeffries* or other case law regarding "intersectional" discrimination.  *See Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 937 (11th Cir. 2001) (defining "intersectional" discrimination as a situation where "the defendant treated [the plaintiff] disparately because she belongs simultaneously to two or more protected

8

classes"). Accordingly, we affirm the district court on this issue and limit Mosley's Title VII discrimination claims to those of gender discrimination.

## III. TITLE VII DISCRIMINATION

Mosley next asserts the district court erred when it granted summary judgment as to Count Three, her Title VII discrimination claim. Mosley contends the court erred in concluding the Defendants had presented a legitimate, nondiscriminatory reason for hiring Battiste for the CJPO position over Mosley, when they referred to Judge Naman's conclusion that Battiste had superior administrative and managerial skills. Mosley asserts the Defendants were precluded from relying upon Battiste's qualifications as their proffered legitimate, nondiscriminatory reason, because Judge Naman selected Battiste from a group of candidates referred to him by a screening committee. Mosley was not included in the referred group, and thus Naman did not consider Mosley's qualifications at the time he selected Battiste.

Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of her sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging a violation under Title VII bears the burden of proving that an employer illegally discriminated against her. *Hinson v. Clinch Cnty., Ga. Bd. of*

9

*Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).  Where, as here, an employee attempts to prove discriminatory intent by circumstantial evidence, the claims may be subject to the methods of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).  Under *McDonnell Douglas*, a plaintiff must make a requisite showing of a *prima facie* case,[5] the employer must then articulate a legitimate, nondiscriminatory reason for its actions, and then the plaintiff must offer evidence that the alleged reasons of the employer are pretext for illegal discrimination.  *McDonnell Douglas*, 411 U.S. at 802-04.

Regarding the defendant's burden to articulate a legitimate, nondiscriminatory reason for their employment decisions, the proffered reason must "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred."  *Tex. Dep't of Cmty. Affairs, v. Burdine*, 450 U.S. 248, 254 (1981).  Defendants need not persuade the court they were actually motivated by the proffered reasons, but must raise a genuine issue of fact as to whether they discriminated against the plaintiff.  *Id.*  In the context of failure-to-hire cases, where an applicant's qualifications are not considered by the

---

[5] Under the *McDonnell Douglas* framework, a plaintiff may establish a *prima facie* case of discrimination by demonstrating: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly-situated employees outside of her class more favorably; and (4) she was qualified for the job.  *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  Neither party challenges the district court's finding that Mosley made a *prima facie* case of gender discrimination.

decision-maker, "the relative qualifications of [the] applicants cannot be a reason for the defendants' failure to hire . . ." *Joshi v. Fla. State Univ. Health Ctr.*, 763 F.2d 1227, 1235 (11th Cir. 1985); *see also Eastland v. Tenn. Valley Auth.*, 704 F.2d 613, 626 (11th Cir. 1983) (finding the defendant employer could not rebut the plaintiff's *prima facie* case of racial discrimination, because the "selecting supervisor" did not know whether the white applicant's qualifications were superior "at the time the hiring decision was made"); *cf. Hill v. Seaboard Coast Line R.R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985) (holding that, in a failure-to-promote context, the defendant employer's articulation of a legitimate, nondiscriminatory reason for promoting a candidate more qualified than the plaintiff "must include the fact that the decision-maker knew that the promoted individual's qualifications were superior at the time the decision was made").

The district court erred in concluding the Defendants had proffered a sufficient legitimate, nondiscriminatory reason for hiring Battiste over Mosley for the CJPO position. The evidence showed Judge Naman selected Battiste from a group of applicants recommended by the screening committee, and Mosley was not among that group. Because Mosley was not among the candidates recommended for an interview, Judge Naman never had an opportunity to actively compare Mosley's qualifications to those of Battiste. Given this lack of comparison between the two candidates, Judge Naman's conclusion that Battiste

11

had relatively superior qualifications cannot serve as the Defendants' legitimate, nondiscriminatory reason to rebut Mosley's *prima* facie case of gender discrimination.  *See Joshi*, 763 F.2d at 1235; *Eastland*, 704 F.2d at 626. Because the Defendants failed to present a sufficient legitimate, nondiscriminatory reason[6] to rebut Mosley's *prima facie* case of discrimination, we vacate and remand on this issue.[7]

## IV. § 1981 CLAIMS

Lastly, Mosley contends the district court erred by granting summary judgment as to her § 1981 claims in Count Five.  She "restates and incorporates by reference" the arguments she presents for the Title VII discrimination claim, which concerned the Defendants hiring Battiste over Mosley for the CJPO position.[8]

---

[6] Had the Defendants presented evidence regarding why the screening committee recommended Battiste to Judge Naman, while declining to advance Mosley, such evidence of an active comparison between the two candidates may have served as a sufficient, legitimate, nondiscriminatory reason.  *See Joshi*, 763 F.2d at 1235.  However, the record is silent as to the screening committee's reasons for advancing Battiste over Mosley during this portion of the hiring process.

[7] Because we vacate and remand on this basis, we need not address Mosley's arguments regarding pretext comparing her qualifications to Battiste's.

[8] Mosley also raises new arguments in her reply brief regarding the district court's finding that she had failed to make a *prima facie* showing regarding several other retaliation claims.  However, because she did not raise these arguments in her initial brief, they are deemed abandoned.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 972-73 (11th Cir. 2008).

12

A.  *§ 1981 Discrimination Claim*

Under 42 U.S.C. § 1981, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens," which in an employment context means protection against discrimination based on race and color.  42 U.S.C. § 1981(a); *see, e.g., Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330-34 (11th Cir. 1998) (reviewing § 1981 discrimination claims in which the plaintiff alleged that, based on his race and national origin, he had been passed over for a promotion and later terminated).  We analyze § 1981 claims using the same evidentiary requirements and analytical framework as claims brought under Title VII.  *See Standard*, 161 F.3d at 1330.  Absent direct evidence of discrimination, we apply the burden-shifting framework established in *McDonnell Douglas* when evaluating discrimination claims under § 1981.  *See id.* at 1331.

Even if the proffered legitimate, nondiscriminatory reason for hiring Battiste over Mosley was insufficient, as it was for Count Three's Title VII discrimination claim, summary judgment as to the § 1981 discrimination claim may be affirmed on other grounds.  *See National R.R. Passenger Corp. v. Rountree Transp. and Rigging, Inc.*, 286 F.3d 1233, 1263 (11th Cir. 2002) (explaining an appellate court may affirm the district court's grant of summary judgment "as long as the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted, or rejected by the district court" (quotation omitted)).

13

Specifically, Mosley did not establish a *prima facie* case of discrimination under § 1981, because Mosley abandoned any argument of racial discrimination in her brief in opposition to the motion for summary judgment. *See* 42 U.S.C. § 1981(a). Further, Mosley could not show that other workers outside of her protected class were treated more favorably, since the individual to whom she lost the CJPO position, Battiste, also was black. *See Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

B.  *§ 1981 Retaliation Claim*

Section 1981 prohibits retaliations against a party who has filed a formal complaint charging racial discrimination. *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1411-13 (11th Cir. 1998) (concluding a claim that an employer retaliated against an employee by firing her for filing a race discrimination claim is cognizable under § 1981).  Absent direct evidence, when analyzing claims for race-based retaliation brought under § 1981, we employ the *McDonnell Douglas* analytical framework. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). "Under this framework, a plaintiff alleging retaliation must first establish a *prima facie* case by showing that:  (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Id.* at 1307-08.  "Once a plaintiff establishes a *prima facie* case of retaliation, the burden of production

14

shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 1308. If the defendant carries this burden of production, the burden shifts to the plaintiff to demonstrate the defendant's proffered reason was merely a pretext for discrimination. *Id.*

Since the same burden-shifting analysis used for Title VII claims also applies to § 1981 claims, the same requirements for a sufficient legitimate, nondiscriminatory reason for Title VII claims may equally apply to § 1981 claims. *See Standard*, 161 F.3d at 1330. Therefore, as with the Title VII claim discussed above, the Defendants' proffered legitimate, nondiscriminatory reason for hiring Battiste over Mosley was insufficient as a matter of law to rebut the *prima facie* case of retaliation. *See Joshi*, 763 F.2d at 1235; *Eastland*, 704 F.2d at 626. Therefore, we vacate and remand on this issue.

## V.  CONCLUSION

Accordingly, we affirm the district court's granting of summary judgment as to claims of racial discrimination, as alleged in Count Three's Title VII claim and Count Five's § 1981 claim. However, we vacate the court's granting of summary judgment as to Mosley's § 1983 claims in Counts One and Two, the Title VII gender discrimination claim in Count Three, and Count Five's § 1981 retaliation claim, and we remand for further proceedings consistent with this opinion.

**AFFIRMED in part; VACATED and REMANDED in part.**