Strafford
No. 2001-223

THE STATE OF NEW HAMPSHIRE

v.

DUANE B. FOSS

Argued: June 19, 2002
Opinion Issued: August 16, 2002

*Philip T. McLaughlin*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Getman, Stacey, Tamposi, Schulthess & Steere, P.A.*, of Bedford (*Andrew R. Schulman* on the brief and orally), for the defendant.

DUGGAN, J. After a jury trial in superior court, the defendant, Duane B. Foss, was convicted of one count of aggravated felonious sexual assault. *See* RSA 632-A:2, I(n) (Supp. 2001). On appeal, he argues that: (1) RSA 632-A:2, I(n) requires proof of actual coercion; (2) the evidence was insufficient to prove that he used his position of authority to coerce the complainant to submit; and (3) the trial court erred in denying his motion for a bill of particulars. We reverse.

The defendant worked as a correctional officer in the house of corrections, where, in July 1999, the complainant was detained. During the complainant's three-week detention, she and the defendant became friends and flirted with each other, and the defendant frequently went into her cell to talk with her and her cellmates. The complainant began exhibiting sexually-explicit behavior towards the defendant. On one occasion, she touched the defendant's genitals, lifted her shirt and dropped her underpants, and asked him to have sex. The defendant then digitally penetrated the complainant. Although the complainant testified that she was experiencing drug withdrawal at the time, she admitted that she voluntarily engaged in the conduct. The complainant also testified that the defendant had given her three cigarettes — one each for herself and her two cellmates — and delivered her wedding ring to her husband in the jail parking lot. After the complainant was transferred to the State prison, the defendant sent her two or three letters and forty dollars.

Prior to trial, the defendant moved for a bill of particulars specifying the specific acts that he used to coerce the complainant to submit to sexual penetration. During a hearing on the motion in Superior Court (*Mohl*, J.), the State took the position that, under RSA 632-A:2, I(n), coercion is not an element of the offense, but rather is implied from the relationship between the two parties, *i.e.*, correctional officer and inmate. The court denied the defendant's motion, finding that the State's interpretation is

supported by the statute's language prohibiting the use of consent as a defense.

In its opening statement, the State conceded that the complainant willingly participated in the sexual conduct with the defendant. Based upon this, the defendant moved to dismiss, arguing that the State failed to allege a *prima facie* case. The State countered that its case was not defeated by the fact that the complainant was a willing participant because "it's enough for someone in a position of authority to use that authority to enter the cell and engage in these relations." The Superior Court (*T. Nadeau*, J.) denied the motion to dismiss, stating that although the State must demonstrate that the defendant used his position of authority to coerce, coercion can come in many forms.

At the close of the evidence, the defendant again moved to dismiss on the grounds that insufficient evidence had been introduced on the elements of coercion and submission. The trial court denied the motion. In its instructions to the jury, the court stated the elements of the offense, including "that the defendant used [his] authority to coerce the alleged victim to submit to sexual penetration." After the jury returned its guilty verdict, the defendant moved for judgment notwithstanding the verdict, which was also denied. This appeal followed.

We first turn to whether the statute requires the State to prove that the defendant coerced the complainant to submit. On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Sullivan*, 144 N.H. 541, 543 (1999). Our task is to construe the Criminal Code provisions "according to the fair import of their terms and to promote justice." RSA 625:3 (1996); *cf. State v. Glidden*, 122 N.H. 41, 45 (1982) (a criminal statute must give a person of ordinary intelligence fair notice of the conduct that it proscribes). When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent. *State v. Comeau*, 142 N.H. 84, 86 (1997).

RSA 632-A:2, I(n) provides:

> I. A person is guilty of the felony of aggravated felonious sexual assault if he engages in sexual penetration with another person under any of the following circumstances:
>
> . . . .
>
> (n) When the actor is in a position of authority over the victim *and uses this authority to coerce the victim to submit* under any of the following circumstances:

(1) When the actor has supervisory authority over the victim by virtue of the victim being incarcerated in a correctional institution or juvenile detention facility; or

(2) When a probation or parole officer has supervisory authority over the victim while the victim is on parole or probation or under juvenile probation.

Consent of the victim under any of the above circumstances in subparagraph (n) shall not be considered a defense.

(Emphasis added.)

The State construes RSA 632-A:2, I(n) as criminalizing *any* sexual penetration by a correctional officer with an inmate. It contends that coercion is implied by virtue of the positions of the two parties because the inmate-officer relationship is inherently coercive. Under the State's theory, the element of coercion can be proven simply by a showing that the defendant was a corrections officer and the victim an inmate under the defendant's supervisory authority.

We conclude that the State's interpretation is not supported by the language of the statute. A plain reading of the statute clearly indicates that coercion is an element of the offense. RSA 632-A:2, I(n) prohibits a person from engaging in sexual penetration "[w]hen the actor is in a position of authority over the victim *and uses this authority to coerce the victim to submit.*" (Emphasis added.) The emphasized phrase implies some affirmative act on the part of the defendant. Subparagraphs (1) and (2) specify under what circumstances a person is prohibited from using his or her authority to coerce another to engage in sexual penetration: (1) where the actor acquires the position of authority by virtue of the victim's incarceration; or (2) where the victim is on probation or parole and the actor is a probation or parole officer with supervisory power over the victim. Nothing in the statute indicates that either of these circumstances replaces the element of coercion.

The State argues that this construction of the statute is undermined by the language barring the use of consent as a defense. Absent a more clearly manifested legislative intent as indicated by the fair import of the statute's terms, we cannot construe RSA 632-A:2, I(n) as the State urges.

Under RSA 626:6, I (1996), consent of the victim "is a defense if such consent negatives an element of the offense or precludes the harm sought to be prevented by the law defining the offense." Once the defendant raises the defense of consent, the burden shifts to the State to disprove consent beyond a reasonable doubt. RSA 626:6, :7, I(a) (1996). Put simply,

when consent is raised as a defense, the State must prove all of the elements of the offense — including coercion in this case — *in addition to* the lack of consent. The issue of consent involves the victim's objective manifestations of her unwillingness to engage in the conduct and thus concerns the victim's demonstrative and verbal conduct. *State v. Jackson*, 141 N.H. 152, 154 (1996).

■ Consent focuses primarily on the conduct of the victim, whereas coercion focuses primarily on the conduct of the defendant. By barring consent as a defense, RSA 632-A:2, I(n) does not relieve the State of its burden of proving that the defendant used his position of authority to coerce the victim to submit. Rather, it prohibits the defendant from arguing that the victim's consent is a complete defense to coercion and permits a jury to find that the State has proven coercion even though the victim consented to the sexual act. In other words, if the State proves that the defendant used his position of authority to coerce the victim to engage in sexual penetration, then the victim has not consented. The elimination of a consent defense excuses the State from proving beyond a reasonable doubt that the victim objectively manifested her unwillingness.

The purpose of the statute is presumably to hold correctional and probation/parole officers to a high standard. It accomplishes this by criminalizing behavior that would not be criminal in other contexts. For example, a correctional officer is prohibited from bestowing special favors upon or withholding privileges from an inmate in exchange for consensual sex. Outside the prison context, such conduct would not necessarily be criminal unless the State proves that the victim did not consent.

Had the legislature intended to proscribe *all* sexual penetration — whether consensual or not — between a correctional officer and an inmate, it certainly could have done so. *Cf.* 18 U.S.C.A. § 2243(b) (2000) ("Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who is — (1) in official detention; and (2) under the custodial, supervisory, or disciplinary authority of the person so engaging; or attempts to do so, shall be fined under this title, imprisoned not more than one year, or both."); Me. Rev. Stat. Ann. tit. 17-A § 253, 2(E) (West Supp. 2001) ("A person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person, not the actor's spouse, is in official custody as a probationer or a parolee, or is detained in a hospital, prison or other institution, and the actor has supervisory or disciplinary authority over the other person."); MODEL PENAL CODE § 213.3(1)(c) (1980) ("A male who has sexual intercourse with a female not his wife, or any person who engages in deviate sexual intercourse ... is

guilty of an offense if . . . the other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over him.").

The State relies upon the statute's legislative history to further support its position. It asserts that the consent provision was added after the Senate Judiciary Committee heard testimony on the bill, *see* SENATE COMM. ON JUDICIARY, HEARING ON HB 735-FN (April 23, 1997), and from the timing of that amendment, the State infers that the provision was meant to criminalize consensual acts. The problem with the State's argument is that the consent provision was included in the original bill, before the senate committee heard testimony on it. *See* House Bill 735-FN (1997); N.H.S. JOUR. 686-87, 1552-53 (1997). In addition, the legislature's intent cannot be clearly divined from the testimony before the Senate Judiciary Committee. We, therefore, do not find the legislative history helpful in resolving the meaning of the statute.

Having decided that RSA 632-A:2, I(n) requires proof of coercion, we turn to whether the evidence was sufficient to establish that the defendant used his position of authority to coerce the complainant into submitting to the sexual acts. The standard of review in such challenges is whether or not a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt, after viewing the evidence and all inferences reasonably derivable therefrom in the light most favorable to the State. *State v. Collins*, 129 N.H. 488, 489 (1987).

Although the word "coerce" is not defined in the statute, *see* RSA 632-A:1 (Supp. 2001), we have construed it broadly in the context of RSA 632-A:2 to include undue influence, physical force, threats or any combination thereof. *Collins*, 129 N.H. at 491 (construing predecessor of RSA 632-A:2, I(k)). Coercion need not be overt and may consist of the subtle persuasion arising from the position of authority. *State v. Carter*, 140 N.H. 114, 117 (1995). In the context of a correctional officer who has supervisory authority over an inmate, coercion may encompass acts that would not constitute coercion outside of a penal institution.

We hold that no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt as the evidence, viewed in the light most favorable to the State, failed to establish that he used his authority to coerce the complainant to submit. The State did not offer any evidence that the defendant exerted undue influence, used physical force, or made threats against the complainant. Although there was testimony that the defendant did favors for the complainant, such as providing her cigarettes, giving her ring to her husband and sending her forty dollars

after she left the house of corrections, the State did not argue to the jury and does not contend on appeal that the favors were bestowed in exchange for sex or that the defendant used his position of authority to subtly persuade the complainant in any way. The evidence in the record demonstrates that he did not prompt her to act in a sexually explicit manner. Additionally, the fact that the complainant may have been experiencing drug withdrawal cannot, in and of itself, support a reasonable inference of coercion, and no evidence was presented that the defendant knew of her state or took advantage of it to coerce her to submit. Indeed, the State does not dispute that there was insufficient evidence of actual coercion, but relies solely upon its position that coercion is implied by the nature of the relationship between the defendant and the complainant. Of course, given the statute's language, the complainant's admission that she consented to the sexual acts would not preclude a finding of coercion.

Based upon our disposition, we need not address the defendant's argument regarding the bill of particulars.

*Reversed.*

BROCK, C.J., and DALIANIS, J., concurred.