NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

8th Circuit Court - Keene Probate Division
No. 2015-0220

ATTORNEY GENERAL, DIRECTOR OF CHARITABLE TRUSTS

v.

LORETO PUBLICATIONS, INC.

Submitted:  February 17, 2016
Opinion Issued:  May 27, 2016

Joseph A. Foster, attorney general (Thomas J. Donovan, director of charitable trusts, on the brief), for the petitioner.

Douglas Bersaw, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), on the brief, for the respondent.

HICKS, J.  The respondent, Loreto Publications, Inc. (Loreto), appeals an order of the Circuit Court (Leonard, J.) ruling that Loreto failed to establish that it was statutorily exempt from filing annual reports with the New Hampshire Attorney General's Office, see RSA 7:19, :28 (2013), and requiring it to file reports for fiscal years 2010 to 2014.  The petitioner is the Director of Charitable Trusts of the Attorney General's Office.  We affirm.

The trial court found, or the record supports, the following facts. Loreto is a nonprofit corporation organized under RSA chapter 292. See RSA ch. 292 (2010 & Supp. 2015). Its stated purpose is "the promotion, and propagation of the Roman Catholic religion through the publication, sale, or distribution of books, magazines, pamphlets or [tracts], and the use of any other communications media, whether electronic, audio, visual, printed, written or oral." In or around 2003, the Internal Revenue Service (IRS) granted Loreto a tax exemption under section 501(c)(3) of the Internal Revenue Code. See 26 U.S.C. § 501(c)(3) (2012). In 2008, the Charitable Trust Unit of the Attorney General's Office learned that Loreto was operating as a 501(c)(3) tax exempt organization in New Hampshire and advised Loreto that New Hampshire law required it to register with and submit annual reports to the Attorney General's Office. See RSA 7:21, II (2013); RSA 7:28, III. In 2009, Loreto registered with the Charitable Trust Unit but did not file an annual report for fiscal year 2010 or any subsequent fiscal year. In 2013, Loreto's 501(c)(3) status was "automatically revoked [by the IRS] for its failure to file a Form 990-series return or notice for three consecutive years."

The Interim Director of Charitable Trusts sought an order in the circuit court requiring Loreto to file its delinquent reports. Loreto moved to dismiss, arguing that "[s]ince [it] . . . is NOT a Charitable Trust, but rather a church/religious organization, [the] court lacks subject matter jurisdiction under [RSA 547:3, II(a)] to hear this matter." The court denied the motion. The court held an evidentiary hearing at which, over Loreto's objection, Diane Murphy Quinlan, the Chancellor of the Roman Catholic Diocese of Manchester, testified that she was unaware of an institutional relationship between Loreto and the Roman Catholic Church. Also over Loreto's objection, Terry Knowles of the Charitable Trust Unit testified about, among other things, Loreto's status as a 501(c)(3) tax exempt organization.

Loreto argued that it was a "religious organization" or an "integrated auxiliary" of a religious organization under RSA 7:19, I, and was therefore exempt from the reporting requirements. The court rejected this argument and ordered Loreto to file its delinquent reports. Loreto appealed.

RSA 567-A:4 (2007) sets forth our standard of review: "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." See RSA 490-F:3 (Supp. 2015) (conferring the jurisdiction, powers, and duties of the former probate court on the circuit court). Thus, "we will not disturb the [circuit court's] decree unless it is unsupported by the evidence or plainly erroneous as a matter of law." In re Estate of Couture, 166 N.H. 101, 105 (2014).

Loreto reasserts its argument that the trial court lacks subject matter jurisdiction over this case. "A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive it."

In the Matter of Ball & Ball, 168 N.H. 133, 140 (2015) (quotation omitted). "We review, de novo, whether the trial court in this case ha[s] subject matter jurisdiction." Id.

The circuit court has jurisdiction over, among other matters, "cases involving charitable uses and trusts." RSA 547:3, II (a) (Supp. 2015). RSA 7:21, II defines "[c]haritable trust" as, among other things, a "charitable organization," which includes "[a]ny person or entity that is determined by the [IRS] to be a tax exempt organization pursuant to section 501(c)(3) of the Internal Revenue Code" or "[a]ny other person or entity that is or holds itself out to be established, in whole or in part, for any benevolent, philanthropic . . . or other charitable purpose." RSA 7:21, II (quotation omitted).

There was testimony at the evidentiary hearing, and the exhibits showed, that Loreto registered as a charitable trust with the Attorney General's Office in 2009 and held 501(c)(3) tax exempt status until the IRS revoked that status in 2013. Loreto maintains that it registered under protest and has not been a 501(c)(3) tax exempt organization since 2009. Regardless of the truth of these assertions, however, Loreto stated in its articles of incorporation, and its president testified, that Loreto was organized as a nonprofit corporation for the charitable purpose of promoting Roman Catholicism. See Restatement (Third) of Trusts § 28, at 9 (2003) ("Charitable trust purposes [may] include . . . the advancement of religion . . . ."). Thus, the record shows that Loreto "holds itself out to be" a charitable entity, and is, therefore, a charitable trust under RSA 7:21, II. Accordingly, we hold that the trial court had subject matter jurisdiction over this case.

Next, Loreto challenges the relevance and, therefore, the admissibility of the testimony of Quinlan and Knowles. "We will not reverse the trial court's decision to admit evidence absent an unsustainable exercise of discretion." State v. Ramsey, 166 N.H. 45, 49 (2014). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401.

In the trial court, Loreto sought to establish, among other things, that it was an "integrated auxiliary" of the Roman Catholic Church. Quinlan's testimony concerned the absence of a relationship between Loreto and the Diocese of Manchester, which tended to make it less probable that Loreto was an integrated auxiliary. Thus, the trial court did not unsustainably exercise its discretion by ruling that Quinlan's testimony was relevant and admissible.

Loreto also asserted that it is not a charitable trust. On appeal, it argues that, from 2010 to 2014 — the years relevant to the petitioner's complaint — Loreto did not have 501(c)(3) status because it stopped filing exemption forms with the IRS after 2009. Thus, its evidentiary argument, as we understand it,

3

is that Knowles' testimony about Loreto's 501(c)(3) status after 2009 is irrelevant because it conflicted with the petitioner's exhibits, which, according to Loreto, show that it held 501(c)(3) status only until 2009. However, because 501(c)(3) tax exempt organizations are charitable trusts under RSA 7:21, II, Knowles' testimony about Loreto's 501(c)(3) designation was relevant. That this testimony may have conflicted with other evidence does not render it inadmissible. See N.H. R. Ev. 402 ("All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute or by these rules or by other rules prescribed by the New Hampshire Supreme Court."). Thus, the trial court did not unsustainably exercise its discretion by admitting Knowles' testimony about Loreto's 501(c)(3) status.

Loreto's principal argument is that it is statutorily exempt from the Attorney General's reporting requirements because it is a "religious organization" or an "integrated auxiliar[y]" of a religious organization under RSA 7:19, I. RSA 7:28, III requires all charitable trusts that are registered in New Hampshire to file annual reports with the Attorney General's Office. RSA 7:19, I, exempts from the statutes governing charitable trusts "any religious organization which holds property for charitable or religious purposes or their integrated auxiliaries or to conventions or associations of churches." RSA 7:19, I (emphasis added). The statute does not define either "religious organization" or "integrated auxiliar[y]." See id.

The trial court determined that "religious organization" in RSA 7:19, I, "refers to religious houses of worship or churches," and concluded that Loreto had failed to show that it was either. The court also concluded that Loreto had failed to show that it was an "integrated auxiliary" of a religious organization because, it reasoned, "[b]ased upon the testimony offered at the [h]earing, . . . the Roman Catholic Church does not recognize an institutional relationship with Loreto . . . [and] has no direct authority [or] involvement with Loreto."

Loreto argues for a broader definition of "religious organization" as "a voluntary association that is based on or related to a religion and seeks to advance one or more of its purposes or interests but does not encompass the full range or scope of a religion or church." (Quotation omitted.) The petitioner counters that the term is ambiguous and that, therefore, we must rely upon legislative history. Based upon that history, the petitioner argues that the drafters intended for the statute to mirror a federal tax law enacted in 1969, see Tax Reform Act of 1969, Pub. L. No. 91-172, § 101(d)(1), 83 Stat. 487, 519-20, which "added an annual filing requirement for tax exempt organizations but excluded 'churches, their integrated auxiliaries, and conventions or associations of churches.'" (Quoting 26 U.S.C. § 6033(a)(3)(A)(i) (2012)). Searching for "a more inclusive term [than 'church'] to describe houses of worship," the petitioner argues, the statute's drafters settled on "religious organization." According to the petitioner, the drafters intended for this

broader term to "match the IRS's interpretation of church under [federal tax law], which include[d] synagogues, mosques and other places of worship."

Statutory interpretation is a question of law, "which we review de novo." Petition of Malisos, 166 N.H. 726, 729 (2014). In matters of statutory interpretation, "[w]e are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Appeal of Wilson, 161 N.H. 659, 662 (2011). "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014). "Unless we find statutory language to be ambiguous, we will not examine legislative history." Forster v. Town of Henniker, 167 N.H. 745, 750 (2015). A statute is ambiguous if its "language is subject to more than one reasonable interpretation." Appeal of Naswa Motor Inn, 144 N.H. 89, 90 (1999).

We acknowledge that "religious organization" is an inherently ambiguous term. Cf. B. Hopkins, The Law of Tax-Exempt Organizations § 10.3, at 320 (9th ed. 2007) ("[A] formal and consistent definition of the term church . . . appears incapable of formulation."). The statute does not offer a definition. Nor does Black's Law Dictionary. Because we conclude that "religious organization" is "subject to more than one reasonable interpretation," Appeal of Naswa Motor Inn, 144 N.H. at 90, it is ambiguous. We therefore look to the statute's legislative history to determine the term's meaning.

Our review of that history confirms that the legislature intended for RSA 7:19 to conform to federal tax law. The statute was amended a few years after the enactment of the Tax Reform Act of 1969. Other than substituting "religious organization" for "church," the statute's language was nearly identical to the pertinent part of the federal law, which established an annual filing requirement for 501(c)(3) organizations, but excluded from that requirement "churches, their integrated auxiliaries, and conventions or associations of churches." Tax Reform Act of 1969 § 101(d)(1). Moreover, in a public hearing before the New Hampshire House Judiciary Committee, the former Director of the Division of Charitable Trusts, Wells Anderson, stated that, if enacted, the statute "would broaden the jurisdiction of the attorney general relative to the recording of activities of charitable trusts [and] . . . would bring the law into conformity with . . . the new federal tax law." Public Hearing on HB 852 Before the House Judiciary Committee at 1 (May 27, 1971). Similarly, a legislator testified that "[t]he intent of the bill[] [was] to bring state statutes into line with the [f]ederal tax law." Id. at 2 (testimony of Rep. David H. Bradley).

Federal tax law regarded "several categories of institutions . . . as religious organizations," including "churches, conventions and associations of

churches, [and] integrated auxiliaries of churches." Hopkins, supra § 10.2, at 315; see 26 U.S.C. § 6033(a)(3)(A)(i). In 1970, the year before the legislature enacted RSA 7:19, the IRS "formulated the criteria that it use[d] to ascertain whether or not an organization qualifie[d] as a church." Hopkins, supra § 10.3, at 316. The criteria, which the IRS made public in 1977, included "a distinct legal existence, a recognized creed and form of worship, a definite and distinct ecclesiastical government, a formal code of doctrine and discipline, . . . established places of worship, regular congregations, regular religious services," and others. Id.

In a hearing before the New Hampshire Senate Judiciary Committee, Anderson specifically linked the term "religious organization" in RSA 7:19 to the term "church": "There are specified exemptions to the reporting requirement: governmental subdivisions; religious organizations—churches get into social action and hold funds not for religious purposes but for social actions like halfway houses; educational organizations like Dartmouth, St. Paul's . . . ." Hearing on HB 852 Before the Senate Judiciary Committee at 1 (June 18, 1971) (emphasis added).

Based on this legislative history, we construe "religious organization" in RSA 7:19 to be consistent with the term "church" as the IRS interprets it in the Federal Tax Code. See 26 U.S.C. § 6033(a)(3)(A)(i). Our interpretation is bolstered by RSA 7:21, II, which defers in part to the IRS in its definition of "[c]haritable trust." See RSA 7:21, II (defining charitable trust as, among other things, "[a]ny person or entity that is determined by the [IRS] to be a tax exempt organization pursuant to section 501(c)(3) of the Internal Revenue Code").

We now turn to Loreto's argument that it is an exempt religious organization or integrated auxiliary of a religious organization under RSA 7:19. Loreto's articles of incorporation and testimony at the evidentiary hearing support the conclusion that Loreto is a publishing house and a bookseller dealing predominantly, but not exclusively, in Catholic works. Loreto's president testified that Loreto conducts no religious services, has no congregation, and provides no religious instruction. And although Loreto changed its designation to "church" in its 2009 exemption form, its president testified to not having received notification that the IRS recognized Loreto as such. On appeal, Loreto argues that "[n]o evidence was introduced that the IRS denied or contested Loreto's change in designation." However, we note that the automatic revocation by the IRS of Loreto's tax exempt status for its failure to file its forms during the three consecutive years after it re-designated itself indicates that the IRS did not accept Loreto's new designation and still required Loreto to file. Thus, Loreto has failed to show that it is a "religious organization" under RSA 7:19.

Concerning Loreto's argument that it is an "integrated auxiliary" of a religious organization, Quinlan testified that, to her knowledge, there was no institutional relationship between Loreto and the Diocese of Manchester. Quinlan explained that, every year, the Conference of Catholic Bishops receives a group exemption letter from the IRS recognizing the tax exempt status of all "educational, charitable, and religious organizations of the Roman Catholic Church as listed in the official Catholic directory." Quinlan then stated that Loreto is not listed in that directory. Thus, Loreto has also failed to show, as it alleges, that it is an integrated auxiliary of the Roman Catholic Church, a "religious organization." We therefore uphold the trial court's ruling that Loreto is not statutorily exempt from filing annual reports with the Attorney General's Office.

Loreto asserts that the burden of proving that it is not an exempt organization is on the petitioner, and the petitioner does not meet that burden. "We review the allocation of the burden of proof, a question of law, de novo." Estate of Abraham v. C.I.R., 408 F.3d 26, 35 (1st Cir.), amended by 429 F.3d 294 (1st Cir. 2005). Although RSA 7:19 does not explicitly mention who bears the burden of proof, "[g]enerally, the party claiming an exemption from the provisions of a statute has the burden to show that it is entitled to the exemption." Goodrow v. Lane Bryant, Inc., 732 N.E.2d 289, 294 (Mass. 2000); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1258-59 (11th Cir. 2011) ("Generally, the party claiming an exemption to a statute's requirements carries the burden of establishing its entitlement thereto."). Consistent with this general rule, and absent contrary indication in RSA 7:19, we interpret the statute to place the burden of proof on the party seeking an exemption. Thus, once the petitioner meets its burden of showing that, under RSA 7:21, an organization is a charitable trust, the burden shifts to the organization to show that it is exempt under RSA 7:19. Having concluded in our subject matter jurisdiction analysis that the petitioner met its burden here, we find no error in the trial court's shifting the burden of proof to Loreto.

We need not address Loreto's arguments about alleged violations of the First and Fourteenth Amendments to the United States Constitution. Contrary to Loreto's assertions as we understand them, the trial court did not interfere with the "rights of Catholics to associate in furtherance of their religious goals." The trial court merely concluded that Loreto was not the type of charitable organization that was statutorily exempt from the Attorney General's reporting requirements.

We also need not address Loreto's argument that the notice of decision issued by the trial court's Clerk of Court erroneously states "Petition for Application of Cy Pres Doctrine; Granted." The statement appears to be a clerical error that did not affect the trial court's ultimate disposition.

7

Having determined that the trial court did not err by ruling that Loreto was not exempt from the statutory reporting requirements, we affirm the court's order requiring Loreto to file its delinquent annual reports.

<u>Affirmed</u>.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.