NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Nashua Probate Division
No. 2016-0177

IN RE ESTATE OF KATHLEEN MULLIN

Argued: November 17, 2016
Opinion Issued: February 15, 2017

Barradale, O'Connell, Newkirk & Dwyer, P.A., of Bedford (Pamela J. Newkirk and Laura T. Tetrault on the brief, and Ms. Newkirk orally), for the appellant.

McLane Middleton, Professional Association, of Manchester (Ralph F. Holmes and Henry R. Klementowicz on the brief, and Mr. Klementowicz orally), for the appellee.

J. Stanley Mullin, Jr., self-represented party, filed no brief.

Michael Mullin, self-represented party, filed no brief.

LYNN, J. The appellant, Patricia M. Jakle, administrator of the estate of Kathleen Mullin, appeals an order of the Circuit Court (Quigley, J.) denying her motion for declaratory judgment. We affirm.

I

The pertinent facts are as follows.  The decedent, Kathleen Mullin, a resident of Hancock, New Hampshire, died intestate on November 26, 2014. Her heirs at law are her three siblings: Michael Mullin, J. Stanley Mullin, Jr., and the appellant.  All of the heirs at law are California residents, as is the appellee Laura Bushley.  From 2008 until her death, the decedent lived in Hancock and owned real property there valued at $235,000.  She also owned real property in California, where she had lived for many years prior to 2008, as well as personal property valued at $2,531,164 at the time of her death.

Although the decedent did not have a will, in 2012, while in California, she executed a trust document (Trust) that had been drafted by a California attorney.  Schedule A of the Trust lists as Trust property some of the decedent's personal property and all of her real property.  She also executed an "Assignment of Property to Trust" (Assignment) that purported to transfer to the Trust all of her real property and some of her personal property.[1]  The Trust contains the following choice of law provision:

> The laws of the State of California in force from time to time shall govern the validity, construction, and administration of this Trust, except that all matters relating to real property shall be governed by the laws of the situs of that real property.  This article shall apply regardless of any change of residence of the Trustee or any beneficiary, or the appointment or substitution of a Trustee residing or doing business in another state.

Prior to her death, the decedent was the beneficiary of the Trust.  The terms of the Trust provide that, upon the decedent's death, approximately 88 percent of the Trust property is to be distributed to charitable organizations.

Laura Bushley, the appellee, is trustee of the Trust.  After the decedent's death, the appellee became administrator of the Trust.  That same month, the appellee filed in the circuit court a petition for estate administration, which was subsequently granted.  In May 2015, the appellee resigned as estate administrator and the appellant was appointed as the successor administrator.

---

[1] Specifically, the assignment included, "personal and household effects of every kind, including but not limited to furniture, fixtures, appliances, furnishings, antiques, pictures, china, silverware, glass, books, jewelry, wearing apparel, tools, pets and companion animals, which I now own or which I may own in the future," as well as "motor vehicles, boats, mobile homes, recreational vehicles; all [insurance] policies," and "all bank accounts, certificates of deposit, mutual and money market funds of all kinds, securities, bonds, agency and custody accounts, notes, real estate wherever located . . . business interests, and any and all other assets wherever located."

In July, the appellant filed an Inventory of Fiduciary listing the decedent's estate as consisting of approximately $2.5 million worth of real estate and personal property. In August, the appellee filed an objection to the Inventory, claiming that it listed property that was owned by the Trust.

In October, the appellee commenced an action in the California Superior Court. Titled a "Petition for Order Transferring Title to Real and Personal Property to Living Trust" (Petition), it referenced the ongoing probate proceedings in New Hampshire, but asserted that, under California law, the Assignment was sufficient to transfer the decedent's property to the Trust. The appellee also asserted in the petition that the California court "has authority and general subject matter jurisdiction over the decedent's property" and "the power to resolve claims over title" to the property.

Shortly thereafter, the appellant filed a motion for declaratory judgment in the circuit court to determine title to the decedent's property. In the motion, the appellant requested that the court declare: (1) that it had "exclusive jurisdiction to determine all claims to the title of property listed on the Inventory"; (2) that the "situs of the property listed on the Inventory is New Hampshire"; and (3) that both "legal and equitable title to the property . . . was held by Kathleen Mullin at the time of her death." The appellee objected to the motion, arguing, among other things, that a declaratory judgment could be rendered only after the filing of an equity petition, the completion of discovery, and the presentation of evidence. The appellee also argued that the validity of the decedent's transfers to the Trust should be determined "by a court in California, under California law," with the exception of the transfer of the New Hampshire real estate, which the appellee acknowledged could be decided by the California court under New Hampshire law.

The circuit court denied the appellant's motion, ruling: (1) that the court was "unable to make a ruling on the requests of the [appellant] regarding the legal and equitable title to the property or to declare that the situs of the property . . . is New Hampshire without appropriate testimony and evidence"; (2) that jurisdiction over the Trust was "properly before" the California court, and that California law must apply except with respect to the New Hampshire real estate; and (3) that the California court was "a more convenient forum" to hear the matter because "[e]vidence and witnesses would more easily be available" there, the decedent "lived in California for many years and utilized services of a California attorney and California financial advisor," the Trust "was drafted in California," and the "trustee and all three heirs-at-law, including the [appellant], are residents of California." This appeal followed.

II

On appeal, the appellant argues that the circuit court erred by ruling that the courts of New Hampshire do not have exclusive jurisdiction to consider

claims regarding the property of the decedent, who was domiciled in New Hampshire at the time of her death. Next, the appellant challenges the circuit court's ruling that the choice of law provision in the Trust dictates that California law governs claims to the decedent's New Hampshire personal property. Finally, the appellant contends that the court erroneously concluded that California is a more convenient forum for adjudicating the claims over the decedent's property. We address these arguments in turn.

A

The appellant first asserts that the circuit court erred by "refusing to declare that [it] has exclusive jurisdiction to decide the underlying dispute"; namely, the validity of the purported inter vivos transfer of the decedent's property to the Trust. The appellant argues that the circuit court had "exclusive" in rem jurisdiction over the decedent's New Hampshire assets because those assets were either located in the state, or were the personal property of a deceased New Hampshire resident. The appellant argues that, by ruling that it did not have exclusive jurisdiction over the decedent's assets, the court acted contrary to over 150 years of precedent and New Hampshire's strong public policy in favor of the expeditious settlement of the estates of its residents.

On issues related to the circuit court's jurisdiction, we apply a de novo standard of review. See Attorney General, Dir. of Charitable Trusts v. Loreto Publ'ns, 169 N.H. 68, 71 (2016) (noting that we review de novo whether a court has subject matter jurisdiction); Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 453 (2015) (reviewing de novo the question of whether a court had jurisdiction to consider a university's appeal of an arbitration decision).

We agree with the appellant's contention that jurisdiction in an in rem proceeding is ordinarily established in the state where the property is located, or, in the case of personal property, the state where the decedent was domiciled. See In re Estate of Rubert, 139 N.H. 273, 276 (1994). However, the appellant goes further, arguing that the United States Supreme Court's holdings in Markham v. Allen, 326 U.S. 490 (1946), and Kline v. Burke Constr. Co., 260 U.S. 226 (1922), dictate that no other court can assume in rem jurisdiction over the same res. Those cases, however, merely elucidated the appropriate division of state and federal jurisdiction under the federal Judiciary Act of 1789 with regard to probate matters. Markham, 326 U.S. at 494; Kline, 260 U.S. at 229. Specifically, the Court stated in Kline that:

> [W]here a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw

to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.

Kline, 260 U.S. at 229.

Although the appellant points to a ruling by the Nevada Supreme Court, interpreting Nevada law, that extended Kline's first-to-the-courthouse rationale to a situation in which multiple states possess concurrent jurisdiction over a probate matter, see Bergeron v. Loeb, 675 P.2d 397, 400-01 (Nev. 1984), we decline to apply such reasoning in this case. That New Hampshire possesses jurisdiction to probate the decedent's estate does not mean that jurisdiction is necessarily exclusive, nor does it require the court to exercise its jurisdiction.[2] On the contrary, a court may decline to exercise jurisdiction for a variety of reasons. See Bartlett v. Dumaine, 128 N.H. 497, 516-18 (1986). For instance, another court with concurrent jurisdiction may be a more convenient forum to decide the particular matter, or proceedings pertaining to the same matter may be pending in another state. See id.; George G. Bogert et al., The Law of Trusts and Trustees § 294, at 244 (2d ed. rev. 1977).

In the instant case, both considerations are present. Although we acknowledge that New Hampshire has a strong public policy in favor of the expeditious settlement of the estates of its residents, as the appellant asserts, we have held that there is an "equally strong policy favoring the orderly administration of trusts." Bartlett, 128 N.H. at 518 (holding that a New Hampshire court should have declined jurisdiction over a petition regarding a trust with connections to both Massachusetts and New Hampshire). We note that, contrary to the appellant's suggestion, the circuit court did not rule that it was not the proper forum to probate the decedent's estate. Rather, we interpret the court's order as ruling merely that the California court has jurisdiction to decide what, if any, property of the decedent had been properly transferred to the Trust; once that determination has been made, the circuit court could then exercise its jurisdiction to probate whatever property of the

---

[2] The appellant cites language in Robinson v. Carroll, 87 N.H. 114 (1934) and Mann v. Carter, 74 N.H. 345 (1907), to support her argument that the circuit court's jurisdiction over all of the decedent's property other than the real estate she owned in California is "exclusive." Yet neither of those cases used the term "exclusive" in a context that has a bearing on the issue presented here; that is, whether to pronounce one state's jurisdiction paramount over another's when deciding the validity of a decedent's inter vivos transfer of property to a trust with significant connections to multiple states.

decedent remained in her estate.  Under the circumstances presented here, we conclude that the circuit court did not err in concluding that the California court had jurisdiction to determine what property belonged to the Trust and in not proceeding with the probate of the decedent's estate until after that determination has been made.

B

The appellant next contends that the circuit court erred by relying solely upon a choice of law provision found in the Trust, which she argues is irrelevant because the phrase "validity, construction, and administration of [the] Trust" in the Trust's choice of law provision does not apply to the "question of the validity and effectiveness of a transfer of property to the Trust." Rather, the appellant argues, the court should have based its decision on "various factual considerations, including the situs of the property, the [d]ecedent's place of residence, the [d]ecedent's intention, and contacts with and the competing interests of the competing forums." We disagree.

As a preliminary matter, we note that in the absence of specification of the law of California, by which the rights of the parties are governed, we may apply the law of the forum on the assumption that the law of California is the same as that here in force.  See Garapedian, Inc. v. Anderson, 92 N.H. 390, 393 (1943) (in absence of evidence of New Jersey law, which governed rights of parties in case, court applied New Hampshire law); Dancart Corp. v. St. Albans Rubber Co., 124 N.H. 598, 601 (1984) ("Foreign law is presumed to accord with the common law of this state in the absence of contrary evidence.").

We have held that the decedent's intent is to be given effect with respect to "the determination of where and under the laws of what state the trusts created with the residue of her estate are to be administered." In re Farnsworth Estate, 109 N.H. 15, 16-17 (1968).  There is no reason for not applying this same principle to the inter vivos trust at issue here.  The terms of the Trust state explicitly that the "law of the State of California . . . shall govern the validity, construction, and administration of this Trust, except that all matters relating to real property shall be governed by the laws of the situs of that real property."

The appellant argues that the words "validity," "construction," and "administration" refer to the "internal affairs" of the Trust only, and do not govern the present case, which she characterizes as a dispute involving a "third party"—the decedent's estate—rather than the Trust's "internal affairs." The appellant cites no authority, and we are aware of none, that supports her interpretation.  On the contrary, we conclude that the term "validity" can encompass questions relating to whether the documents creating a trust were executed in accordance with the formalities required by the applicable

6

jurisdiction, whether a transfer of property to a trust created in another state is valid, and whether a trust violates state property rules. See Bogert et al., supra § 293, at 253-54. This dispute turns upon the validity of the decedent's inter vivos transfers to her own Trust, and specifically whether those transfers conform to the requirements established by the relevant statutes of New Hampshire and California. Thus, the choice of law provision in the Trust is controlling, and we uphold the circuit court's decision implementing the decedent's intent.

C

The appellant's final contention is that the circuit court erred in its forum non conveniens analysis by considering only the "location of the witnesses and whether the law of another jurisdiction may apply" when it should have also considered "a host of other factors." The appellant argues that the presence of witnesses in California was more than outweighed by the various public interests of New Hampshire, thereby rendering the circuit court's analysis incorrect.

"The dismissal of a case due to forum non conveniens is generally within the discretion of the [circuit] court." Stankunas v. Stankunas, 133 N.H. 643, 646 (1990). Thus, we will overturn the circuit court's decision only if we find an unsustainable exercise of discretion. Digital Equipment Corp. v. Int'l Digital Systems Corp., 130 N.H. 362, 365 (1988); cf. State v. Lambert, 147 N.H. 295, 296 (2001). To show that the circuit court's decision is not sustainable, the appellant must "demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of [her] case." Lambert, 147 N.H. at 296 (quotation omitted).

We have cited with approval the factors enumerated by the United States Supreme Court for applying the doctrine of forum non conveniens. Leeper v. Leeper, 116 N.H. 116, 118 (1976) (citing Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947)). These include: (1) "the private interest of the litigant"; (2) the "relative ease of access to sources of proof"; (3) the "availability of compulsory process"; (4) "the cost of obtaining attendance of willing witnesses"; (5) "the possibility of view of premises if appropriate"; (6) "the question of enforceability of the foreign judgment"; and (7) "other concerns relating to the public interest." Id. Here, the circuit court considered, either explicitly or implicitly, the majority of these considerations in reaching its decision. The court observed that it would be easier to access evidence and witnesses in California. The court also pointed to the extensive connections of the decedent, the Trust, and all of the parties to California, implicating "concerns relating to the public interest," the "enforceability of a foreign judgment," and even the "private interest[s]" of the litigants. Leeper, 116 N.H. at 118. Because the record amply supports the court's conclusion that these factors weigh heavily in favor of the selection of

7

California as the more convenient forum, we cannot say that the trial court unsustainably exercised its discretion in ruling that New Hampshire was an inconvenient forum to litigate the question of the validity of the decedent's transfer of assets to the Trust.

<u>Affirmed</u>.

HICKS, CONBOY, and BASSETT, JJ., concurred.