# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0423, <u>State of New Hampshire v. Ernest Justin Blanchette</u>, the court on April 19, 2022, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. After denying the defendant's motion to dismiss, the Trial Court (<u>O'Neill</u>, J.), granted his request for an interlocutory appeal. <u>See</u> <u>Sup. Ct. R.</u> 8. The trial court has transferred the following question for our review: "What is the meaning of the phrase 'where the actor is employed' as contained in RSA 632-A:2, I(n)(1) (2016)?" We reframe the question as: "Was the defendant, Ernest Justin Blanchette, 'employed' by the correctional institution in which the alleged victim (victim) was incarcerated within the meaning of RSA 632-A:2, I(n)(1) (2016) (amended 2018)?" As reframed, we answer the transferred question "no" and remand for further proceedings consistent with this order.

We accept the statement of the case and facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. <u>See</u> <u>State v. Hess Corp.</u>, 159 N.H. 256, 258 (2009). Before it was amended in 2018, RSA 632-A:2, I(n)(1) provided, in pertinent part:

> I. A person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person . . . :
> . . . .
>
> (n) When the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit . . . :
>
> (1) When the actor has direct supervisory or disciplinary authority over the victim by virtue of the victim <u>being incarcerated in a correctional institution</u>, the secure psychiatric unit, or juvenile detention facility <u>where the actor is employed</u> . . . .

RSA 632-A:2, I(n)(1) (emphases added).

At the time of the charged offense in this case, the victim was an inmate at the Belknap County House of Corrections and the defendant was a Belknap

County deputy sheriff. In October 2020, the defendant was indicted on two counts of aggravated felonious sexual assault (AFSA) stemming from an alleged September 2014 incident. Both indictments alleged that at the time of the incident, the defendant "was in a position of authority over [the victim] by being employed as an agent of the Belknap County Department of Corrections, and used that authority to coerce [her] to submit because he had direct supervisory authority over [her] by virtue of [the victim] being incarcerated in the Belknap County House of Corrections." (Emphasis added.)

In 2016, the defendant was convicted of AFSA against the same victim. In that case, the jury found that the defendant had sexually assaulted the victim when he transported her to the New Hampshire State Prison for Women. State v. Blanchette, Case No. 2016-0313, 2017 WL 2791496, at *1 (N.H. May 15, 2017) (non-precedential order). We reversed the conviction on the ground that the evidence was insufficient to prove that the defendant was "employed" by a correctional institution for purposes of RSA 632-A:2, I(n)(1). Id. at *2-3.

In the prior case, the parties "dispute[d] whether the statute covers the defendant's conduct." Id. at *2. Under the State's interpretation, the defendant was "employed" by either the county jail or the state prison because those facilities had entrusted him with the victim's transport. See id. Under the defendant's interpretation, the defendant was not "employed" by either the county jail or the state prison because he was an employee of the sheriff's department. See id. We assumed without deciding that the State's broader interpretation of the statute applied and, viewing the evidence in the light most favorable to the State, found it to be insufficient because the evidence at trial was that the trial court, rather than the state prison or county jail, had directed the transport. Id. at *2-3. Describing the statutory interpretations of both parties as "facially plausible," we "invite[d] the legislature to amend the language in RSA 632-A:2, I(n)(1) to clarify its intent with regard to the meaning of the phrase at issue." Id. at *4. The legislature did so in 2018. See Laws 2018, 159:1; RSA 632-A:2, I(n)(1) (Supp. 2021).

As in the prior case, the parties to the instant appeal differ as to whether the State can prove, beyond a reasonable doubt, that the defendant was "employed" by a correctional institution within the meaning of the statute before it was amended in 2018. The trial court transferred the question in this case "to clarify further proceedings," noting that under the State's interpretation, "the State can satisfy" the "employed" element of the crime, and that under the defendant's interpretation, "the State cannot meet its burden of proof" on that element.

Resolving the transferred question requires us to interpret the pre-2018 version of RSA 632-A:2, I(n)(1). Statutory interpretation presents a question of law, which we review de novo. Attorney General, Dir. of Charitable Trusts v.

2

Loreto Publ'ns, 169 N.H. 68, 74 (2016). We construe provisions of the Criminal Code "according to the fair import of their terms and to promote justice." RSA 625:3 (2016). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. See State v. Pinault, 168 N.H. 28, 31 (2015). Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. Id. Finally, we interpret statutes in the context of the overall statutory scheme and not in isolation. Id. Unless we find statutory language to be ambiguous, we will not examine legislative history. Loreto Publ'ns, 169 N.H. at 74. A statute is ambiguous if its language is subject to more than one reasonable interpretation. Id.

The defendant argues that "[e]mployment derives from the employer-employee relationship." The State counters that the plain meaning of the word "employ" as used in the pre-2018 version of the statute is "to use or engage the services of." (Quotations omitted.) There is dictionary support for both interpretations. See Webster's Third New International Dictionary 743 (unabridged ed. 2002) (defining the word "employ" to mean "to use or engage the services of" or "to provide with a job that pays wages or a salary or with a means of earning a living"). We find both interpretations to be reasonable. Accordingly, we consult legislative history. See Loreto Publ'ns, 169 N.H. at 74.

The phrase "where the actor is employed" was added to RSA 632-A:2, I(n)(1) in 2003 by House Bill (HB) 105. See Laws 2003, 226:2. Before 2003, the statute prohibited "a person from engaging in sexual penetration when the actor is in a position of authority over the victim and uses this authority to coerce the victim to submit" and "the actor has supervisory authority over the victim by virtue of the victim being incarcerated in a correctional institution or juvenile detention facility." State v. Foss, 148 N.H. 209, 212 (2002) (quotation and emphasis omitted); RSA 632-A:2, I(n)(1) (Supp. 2002). As introduced, among other things, HB 105 added "or disciplinary" after the phrase "has supervisory." House Bill 105 (2003).

When the Senate Committee on Judiciary considered the bill, one senator expressed concern that it would criminalize sexual contact between a correctional officer who worked at one facility and an inmate housed in another facility. See An Act relative to sexual assaults committed by corrections officers, probation and parole officers, and juvenile probation and parole officers against individuals under their supervision, Minutes of Hearing on H.B. 105 before the S. Comm. on Judiciary 3-4 (N.H. Apr. 8, 2003), available at http://gencourt.state.nh.us/BillHistory/SofS_Archives/2003/senate/HB105S.pdf (last checked April 4, 2022) (remarks of Sen. Frank V. Sapareto). The Office of the Attorney General subsequently proposed two amendments to "make clear that the officer must have direct authority over the victim." Letter

from Ann M. Rice, Assoc. Attorney Gen., Criminal Justice Bureau, to Sen. Andrew Peterson, Chair, S. Comm. on Judiciary (N.H. May 9, 2003), available at http://gencourt.state.nh.us/BillHistory/SofS_Archives/2003/senate/HB105S.pdf (last checked Apr. 4, 2022).  One proposal was to insert the word "direct" before the phrase "supervisory or disciplinary authority over the victim."  Id. (quotations omitted).  The other proposal was to insert the phrase "where the actor is employed" after the list of facilities in which a victim may be incarcerated.  Id.  Thereafter, the legislature amended HB 105, as suggested. See N.H.S. Jour. 1080-82 (2003); N.H.H.R. Jour. 803 (2003).  And, both suggestions were eventually enacted into law.  See Laws 2003, 226:2.

Our review of this legislative history persuades us that the legislature intended the word "employ" as used in RSA 632-A:2, I(n)(1) to refer to the employer-employee relationship.  The legislature added the word "direct" before the phrase "supervisory or disciplinary authority" and inserted the phrase "where the actor is employed" at the end of the list of facilities in which a victim could be incarcerated specifically to narrow the scope of the statute.  As amended in 2003 by HB 105 and before it was again amended in 2018, RSA 632-A:2, I(n)(1) applied only when a person had direct supervisory or disciplinary authority over a victim because the victim was incarcerated in the same facility in which the actor worked.

Although legislative history has resolved the ambiguity in the pre-2018 version of the statute, we note that if it had not, the rule of lenity would require us to resolve the ambiguity in the defendant's favor.  See State v. Dansereau, 157 N.H. 596, 602-03 (2008).  For all of these reasons, therefore, we conclude that the defendant was not "employed" within the meaning of the pre-2018 version of RSA 632-A:2, I(n)(1) by the county jail where the victim was housed. We remand for further proceedings consistent with this order.

Remanded.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

4